## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| JC USA, Inc. d/b/a Jenny Craig, *et al.*,[1] | ) Case No. 23-10585 (JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline:** |
| | ) |
| | ) **Hearing Date:** |
| | ) |
| | ) |

## MOTION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE, FOR AN ORDER (A) AUTHORIZING THE PRIVATE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) AUTHORIZING AND APPROVING THE SHARING AGREEMENT, AND (D) GRANTING RELATED RELIEF

Don A. Beskrone, the Chapter 7 Trustee (the "Trustee" or "Seller") of the above-captioned debtors (collectively, the "Debtors") and their estates, by and through his proposed undersigned counsel, hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) approving and authorizing the private sale of certain assets of the Debtors to JCR Holdings II, LLC (the "Buyer") free and clear of all liens, claims, encumbrances and other interests, (ii) authorizing assumption and

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: JC USA, Inc. (0028), JC Franchising, Inc. (7656), Craig Holdings, Inc. (1506), Jenny C Acquisition, Inc. (2395), Jenny C Intermediate Holdings, Inc. (3621) and Jenny C Holdings, LLC (4170).

assignment of executory contracts and unexpired leases, (iii) authorizing and approving the Sharing Agreement (as defined below), and (iv) granting related relief.  In support of the Motion, the Trustee relies on the Declaration of Don A. Beskrone in support of the Motion attached as **Exhibit B** hereto.  In further support of the Motion, the Trustee respectfully represents as follows:

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 7 cases (the "Cases") and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rules 2002-1 and 6004-1.

5.      Pursuant to Local Bankruptcy Rule 9013-1, the Trustee consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Background

**A.      Procedural Background**

6.      On May 5, 2023 (the "Petition Date"), the Debtors commenced these Cases by filing chapter 7 petitions in this Court.

7.      On or around the Petition Date, the United States Trustee for the District of Delaware appointed Don A. Beskrone to serve as the Trustee in these Cases.  The meeting of creditors pursuant to section 341 of the Bankruptcy Code is scheduled for June 9, 2023.

**B.      The Debtors' Assets and the Proposed Sale**

8.      Prior to the Petition Date, the Trustee understands that the Debtors owned and operated a weight loss, weight management, and nutrition company that provided ready-to-eat fresh and frozen meals, with personalized meal plans and wellness coaching.

9.      The Trustee understands that prior to his appointment and the Petition Date, there were extensive discussions with several parties regarding a potential sale of the Debtors' assets. Since the Petition Date, the Trustee has undertaken his own investigation of the Debtors' assets in order to maximize value to benefit creditors.  In connection therewith, the Trustee and his professionals have also engaged with several parties regarding a sale of the Debtors' assets.

10.     As a result of these efforts, and as an exercise of the Trustee's business judgment, the Trustee has determined that the bid received from the Buyer represents the highest and best offer received for certain of the Debtors' intellectual property and customer related assets.  As part of this determination, the Trustee calculated the net value of the bid to the estate, gauged the certainty of the bid brought to the process, and considered the elimination of potentially unknown administrative expenses the estate might incur if the sale process ran for an extended period of time.

11.     The Trustee and the Buyer have engaged in extensive negotiations regarding the transfer and sale of such assets (the "Purchased Assets"), and the terms and conditions thereof, which have resulted in an asset purchase agreement, substantially in the form attached as Exhibit 1

to the Proposed Order (the "<u>APA</u>")[2].

12.    Among other things, the APA provides for a purchase price of up to $15.5 million comprised of the following consideration:  (a) $5.5 million in cash from the Buyer and (b) a credit bid of Encina Private Credit SPV, LLC, in its capacity as First Out Lender under that certain Agreement Among Lenders, dated as of April 3, 2019 (as amended, the "<u>Agreement Among Lenders</u>") (the "<u>First Out Lender</u>") in an amount of up to $10.0 million of the First Out Loan Obligations (as defined in the Agreement Among Lenders), with Buyer as its designee to receive the Purchased Assets (the "<u>Purchase Price</u>").  In the event any third party submits a competing bid to the Trustee for the Purchased Assets, the First Out Lender agrees to bid an amount of its claims such that the Purchase Price will not be less than the amount of such third-party bid plus $1.00; *provided that* in no event will the First Out Lender be required to bid more than $10.0 million of the First Out Loan Obligations.

13.    The Purchased Assets include: (a) the Debtors' intellectual property, including trademarks, domain names, copyrights, patents, trade secrets, software, intellectual property claims, marketing materials, and certain intellectual property related documents; (b) the Debtors' customer lists and certain customer related assets; and (c) certain of the Debtors' contracts as determined by the Buyer prior to closing of the sale, in each case as set forth in greater detail in the APA.  The Purchased Assets are being sold on an "as is, where is" basis.

14.    The transaction proposed in the APA is the product of good faith, arms' length negotiations between the Trustee, the Buyer, and the First Out Lender, and all parties were represented by able counsel.  The Trustee further submits that a successful and private sale of the Purchased Assets on an "as is, where is" basis and free and clear of liens, claims, and encumbrances

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the APA.

pursuant to section 363 of the Bankruptcy Code is the best way to maximize the value of the Debtors' estates under the facts and circumstances of these Cases.  Indeed, the sale of the Purchased Assets represents the only source of meaningful recovery for creditors in these Cases (apart from any potential litigation claims).  Accordingly, the Trustee seeks Court authorization to undertake a private sale of the Purchased Assets under and pursuant to the Bankruptcy Code and the APA.

15.    The APA also contemplates that Buyer may designate executory contracts and unexpired leases for the Trustee to assume and assign to Buyer.  The parties contemplate that the assumption and assignment of these agreements, if any, is an integral to the sale of the Purchased Assets and represents a sound exercise of the Trustee's business judgment.

16.    Pursuant to this Motion, the Trustee is also seeking approval of an agreement between the Trustee and the First Out Lender concerning the disposition of the Collateral and a carve-out from the Collateral for the payment of the costs of disposing of the Collateral, including payment of fees of the Trustee and his professionals (the "Sharing Agreement", a copy of which is annexed hereto as **Exhibit C**).[3]  Under the Sharing Agreement, the Trustee has agreed that the prepetition liens of the Agent, for the benefit of the Lenders, are (i) valid, binding, perfected, enforceable liens, including, without limitation, all postpetition proceeds, products, offspring, rents and profits thereof, (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) subject and subordinate only to (A) the Replacement Liens and (B) the Carve-Out (to which the Replacement Liens are subject).  Under the Sharing Agreement, the Trustee stipulates that (i) the Prepetition Loan Documents are valid and binding agreements and obligations of the Debtors and the Estates, (ii) the Prepetition Obligations constitute legal, valid, binding obligations of the

---

[3] Capitalized terms used but not otherwise defined in these paragraphs 16-19 shall have the meaning ascribed to them in the Sharing Agreement.

Debtors and the Estates, enforceable in accordance with their terms, and no objection, defense, counterclaim, avoidance, subordination, setoff, recharacterization, deductions, impairment, disallowance or challenge of any kind or nature with respect to the Prepetition Obligations exists, and (iii) that none of the Prepetition Liens, Prepetition Obligations, nor amounts previously paid to the Agent or the Lenders, if any, on account thereof or with respect thereto, is subject to objection, avoidance, subordination, setoff, recovery, recharacterization, deductions, challenge, disallowance or impairment under the Bankruptcy Code or applicable non-bankruptcy law.

17.     In addition, under the Sharing Agreement, the Trustee has stipulated that the Debtors and the Estates do not have, and upon entry of an order approving the Asset Sale will forever release, and forever be barred from bringing, exercising or enforcing, any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or otherwise, against First Out Lender or any of its successors-in-interest, predecessors-in-interest, officers, directors, managers, and members (collectively, the "Related Parties") with respect to the liens securing, and the obligations constituting, the First Out Claim Amount and/or the Prepetition Loan Documents, all as set forth at length in the Sharing Agreement.

18.     Under the Sharing Agreement, the First Out Lender has agreed to advance up to $25,000 to the Trustee prior to the closing of the Asset Sale to allow the Trustee to retain consultants in connection with the sale process.  Any such funds expended shall be credited to reduce the Carve-Out on a dollar-for-dollar basis and shall be treated as an allowed First Out Loan Obligation and superpriority administrative expense.

19.     Finally, the Trustee seeks approval of an additional cash payment to the Buyer of $450,000 from the proceeds of any overbid and payment for the First Out Lender's reasonable

fees, costs, and expenses incurred in connection with the transactions contemplated in the APA (the "Break Up Fee").

## C.    Compliance with Local Rule 6004-1

19.    Pursuant to Local Rule 6004-1, the following provisions are required to be highlighted in connection with the proposed sale of the Purchased Assets:

| Local Rule 6004-1 Disclosure | Terms of the Sale |
|---|---|
| **Sale to Insider** | N/A |
| **Agreements with Management** | N/A |
| **Releases** | Under the Sharing Agreement, the Trustee has stipulated that the Debtors and the Estates do not have, and upon entry of an order approving the Asset Sale will forever release, and forever be barred from bringing, exercising or enforcing, any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or otherwise, against First Out Lender or any of its successors-in-interest, predecessors-in-interest, officers, directors, managers, and members with respect to the liens securing, and the obligations constituting, the First Out Claim Amount and/or the Prepetition Loan Documents. |
| **Private Sale / No Competitive Bidding** | The Trustee seeks approval of a private sale without an auction process, subject to higher and better offers.<br><br>Buyer acknowledges that Seller, as a trustee subject to the oversight and under the jurisdiction of the Court, may be required to accept a higher and better bid for the Purchased Assets, and that an auction may be required to obtain higher or better bids for the Purchased Assets. If, prior to the sale hearing, Seller receives a higher and better offer for the Purchased Assets, Buyer understands and agrees that Seller may convene an auction or some other process to obtain the highest and best bid for the Purchased Assets, provided that in no event shall Seller accept a higher and better offer for the Purchased Assets without affording Buyer the right to submit a topping bid(s) at an auction or otherwise.<br><br>APA §8.2. |

| | |
|---|---|
| **Closing and Other Deadlines** | Subject to the terms of the APA, the sale and purchase contemplated thereby shall take place at a closing (the "Closing") on a date that is two business days following the waiver or satisfaction of the closing conditions set forth in the APA, with the goal of Closing occurring by May 26, 2023.<br><br>APA §3.2. |
| **Good Faith Deposit** | N/A |
| **Interim Arrangements with Proposed Purchaser** | N/A |
| **Use of Proceeds** | As part of the Sharing Agreement, the Trustee has agreed to a carve-out and surcharge under 506(c) of the Bankruptcy Code in the amount of $1.0 million for the benefit of the estates, and to cover his actual costs in connection with the sale process, including, without limitation, the Trustee's fee and expenses, counsel fees and expenses, accountant fees and expenses, expenses incurred in retaining consultants to assist with the sale process and other costs required by or attendant to the sales process and estate administration; _provided_ that the fees and expenses incurred by the Buyer in connection with the preparation of this Motion shall be deducted from this amount and paid for by the Trustee in an amount not to exceed $6,000. The remaining cash proceeds, in an amount of no less than $4.5 million, shall be applied to reduce the First Out Loan Obligations. |
| **Tax Exemption** | N/A |
| **Record Retention** | The Debtors' corporate minute books and corporate records are not being sold to the Buyer.<br><br>APA, Schedule 1.01 |
| **Sale of Avoidance Actions** | N/A |
| **Requested Findings as to Successor Liability** | Buyer will not be responsible as a successor employer for any obligations of Seller or the Debtors.<br><br>Buyer also seeks entry of the Proposed Order that provides that the Purchased Assets sold to Buyer shall be transferred to Buyer free and clear of all liens and all liabilities of any kind or nature whatsoever, whether at law or in equity, including without limitation, free and clear of any rights or claims based on theories of transferee or successor liability under any applicable law, whether arising before or after |

| | |
|---|---|
| | the Petition Date, save and excepting only those liabilities expressly assumed by Buyer. |
| **Sale Free and Clear of Unexpired Leases** | The Purchased Assets shall be transferred to Buyer free and clear of all liens, claims, encumbrances, and other interests, including unexpired leases.<br><br>APA § 2.1 |
| **Credit Bid** | The Purchase Price includes a credit bid of the First Out Lender in an amount of up to $10.0 million of the First Out Loan Obligations.<br><br>APA § 3.1 |
| **Relief from Bankruptcy Rule 6004(h)** | The Trustee requests that the Proposed Order be made effective immediately upon entry.  Thus, the Trustee requests waiver of the fourteen day stay under Bankruptcy Rule 6004(h). |

### Relief Requested and Basis Therefor

20.    By this Motion, the Trustee seeks entry of the Proposed Order, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014 and Local Rules 2002-1 and 6004-1 (i) approving and authorizing the private sale on an "as is, where is" basis free and clear of all liens, claims, encumbrances, and other interests, (ii) authorizing assumption and assignment of executory contracts and unexpired leases, (iii) authorizing and approving the Sharing Agreement, and (iv) granting related relief.

**A.     The Proposed Sale of the Purchased Assets Should Be Approved as the Product of the Trustee's Exercise of Sound and Reasonable Business Judgment**

21.    The Trustee submits that ample authority exists for the approval of the sale of the Purchased Assets.  Section 363(b) of the Bankruptcy Code permits a trustee to sell assets outside the ordinary course of business.  Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Finally, Bankruptcy Rule 6004 states, in relevant part, that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." FED. R. BANKR. P. 6004(f)(1).

22.     Courts interpreting section 363(b) of the Bankruptcy Code have held that transactions should be approved when they are supported by the sound business judgment of the trustee. *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions.").

23.     Here, the Trustee respectfully submits that the sale of the Purchased Assets to the Buyer is both warranted and reasonable and well within the Trustee's sound business judgment. As a fiduciary of the Debtors and their stakeholders, the Trustee is charged with maximizing value. As addressed above, the Trustee submits that selling and transferring the Debtors' interest(s) in the Purchased Assets at this time is warranted given its potential upside to creditors and the estate generally. The Trustee determined that the offer received from the Buyer was the highest and best. Indeed, on a net basis, the bid of the Buyer yields the highest and best offer—and one that will provide certainty without further risk to the estate. Further, the Trustee will provide all parties who previously expressed to the Trustee an interest in the Purchased Assets with notice of the filing of this Motion and the APA in the event they are interested in offering more than the Buyer.

24.     The Trustee submits that the fairness and reasonableness of the consideration to be paid for the Purchased Assets by the Buyer is demonstrated by the sale negotiations that took place before and after the Petition Date, the Trustee's sale efforts since his appointment, and the facts and circumstances of these Cases.  Further, the APA stems from good faith, arms' length negotiations among the parties.  Accordingly, the proposed sale to the Buyer is both justified, necessary, and well within the Trustee's exercise of his sound business judgment.  For these reasons, the Motion should be approved by this Court.

**B.     The Proposed Sale of the Purchased Assets Should Be Approved Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to § 363(f) of the Bankruptcy Code**

25.     Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if:

    a.    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    b.    such entity consents;

    c.    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d.    such interest is in bona fide dispute; or

    e.    such entity could be compelled in a legal or equitable proceeding, to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of the five requirements will be sufficient to permit sale of the Purchased Assets free and clear of all encumbrances that may be asserted in these Cases.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met); *see also In*

*re Dundee Equity Corp.,* 1992 WL 53743, *4 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

26.    To maximize the value of the Purchased Assets, the Trustee proposes to transfer the Purchased Assets to the Buyer free and clear of all liens, claims, interests, and encumbrances.  In the event a valid lien encumbers any of the Purchased Assets, the holder(s) of such liens will be adequately protected by having their liens attach to the sale proceeds in the same order of priority, with the same validity, force and effect as such liens had in the Purchased Assets prior to the sale, subject to any claims and defenses the Trustee and the estate may have with respect to the same.

27.    Finally, the Trustee submits that the absence of an objection to the relief sought in this Motion is, or should be deemed, consent within the meaning of section 363(f)(2) of the Bankruptcy Code.  *See Hargrave v. Township of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to the sale motion, the secured creditor was deemed to consent under section 363(f)(2) of the Bankruptcy Code).

28.    Accordingly, the Trustee requests that the sale of the Purchased Assets be held free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances, if any, attaching to the net proceeds of the sale of the Purchased Assets.

**C.    The Sale Should be Subject to the Protections of Section 363(m) of the Bankruptcy Code**

29.    Section 363(m) of the Bankruptcy Code provides, in pertinent part, that:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal

11 U.S.C. § 363(m).

30.     The Trustee requests that the Court find and hold that the Buyer be entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  Such relief is appropriate because the parties engaged in good faith, arm's length negotiations and all parties-in-interest will have the opportunity to review and object to the proposed sale.  *See also Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.)*, 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (stating that upon notice to lienholders, section 363(m) protects good faith purchasers).

**D.     Assumption and Assignment of the Assumed Contracts is Warranted Under Section 365 of the Bankruptcy Code.**

31.     Pursuant to the APA, the Buyer may designate executory contracts and unexpired leases for the Trustee to assume and assign to the Buyer (the "Assumed Contracts").

32.     Section 365 of the Bankruptcy Code provides, "(a) Except as provided in…subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).

33.     The business judgment test is the standard applied by courts to determine whether an executory contract or unexpired lease should be assumed based on the debtor's determination that it would be beneficial to the estate. *See Sharon Steel Corp v. National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (holding that the "resolution of [the] issue of assumption or rejection will be a matter of business judgment").  Courts generally will not second-guess a debtor's business judgment concerning the assumption of an executory contract. *See In re Exide Techs.*, 340 B.R. 222, 240 (Bankr. D. Del. 2006) (overturned on other grounds).

34.     To determine if the business judgment standard is met, the court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances*." In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009).  A court

should find that assumption or rejection is elected on "an informed basis, in good faith, and with the honest belief that the assumption … is in the best interests of [the debtor] and the estate." *In re Network Access Solutions Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005).   Under this standard, a court should approve a debtor's business decision unless it was the product of bad faith or a gross abuse of discretion. *See In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

35.     As previously noted, the assumption of the Assumed Contracts is required so that they may be assigned to the Buyer in connection with the Asset Sale.  The Buyer will assume all cure costs associated with assumption and assignment of the Assumed Contracts.  Because there is no cost to the Trustee associated with assumption and assignment, any decision to assume the Assumed Contracts is an exercise of the Trustee's sound discretion, as the assumption of the Assumed Contracts will facilitate the consummation of the Sale, thereby benefiting the Debtors' estates.  Accordingly, Trustee believes that assuming the Assumed Contracts (if any) is in the best interests of the Debtors' estates, their creditors, and all other parties in interest.  To the extent the Buyer elects to assume any contracts, the Buyer will present evidence to support adequate assurance of future performance at the hearing on approval of the Asset Sale.

**E.     The Break-Up Fee Should be Approved.**

36.     Bankruptcy courts have identified at least two instances in which purchaser incentives and protections may benefit the estate.  First, a break-up fee or expense reimbursement may be necessary to preserve the value of the estate if assurance of the fee "[induces] a[n offer] that otherwise would not have been made and without which [offers] would have been limited." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999) *(O'Brien)*.   Second, if the availability of the break-up fee and expense reimbursement were to induce a potential purchaser to research the value of the debtor and convert

the value to a dollar figure on which other potential purchasers can rely, the potential purchaser may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth. *Id.*; *see also In re Reliant Energy Channel View LP*, 594 F.3d 200, 206-08 (3d Cir. 2010).

37.     In *O'Brien*, the Third Circuit Court of Appeals reviewed the following nine factors set forth by the lower court as relevant in deciding whether to award a break-up fee:

  a.  the presence of self-dealing or manipulation in negotiating the break-up fee;

  b.  the reasonableness of the break-up fee relative to the purchase price;

  c.  whether the unsuccessful bidder placed the estate property in a "sales configuration mode" to attract other bidders to the auction;

  d.  the ability of the request for a break-up fee to serve to attract or retain a potentially successful offer, establish an offer standard or minimum for other potential purchasers, or attract additional potential purchasers;

  e.  the correlation of the fee to a maximum of value of the debtor's estate;

  f.  the support of the principal secured creditors and creditors' committees for the break-up fee;

  g.  the benefits/safeguards to the debtor's estate; and

  h.  the substantial adverse impact of the break-up fee on unsecured creditors where such creditors oppose the break-up fee.

*See O'Brien*, 181 F.3d at 536.

38.     In the present case, the Break-Up Fee falls squarely within the *O'Brien* factors because there was no self-dealing or manipulation in negotiating the Break-Up Fee, the Breakup Fee was necessary to attract and retain the Buyer's offer, and the Break-Up Fee has been approved

by the First Out Lender.  Further, the Break-Up Fee is reasonable in relation to the size of the proposed sale and under the facts and uncertainties of this transaction.

39.    The Break-Up Fee is approximately three percent (3%) of the Purchase Price, an amount at or below break-up fees or expense reimbursements approved in other chapter 11 cases in similar situations.  *See, e.g., In re Things Remembered, Inc.,* Case No. 19-10234 (KJC) (Bankr. D. Del.) (approving breakup fee of $425,000 or 2.4% of the purchase price and expense reimbursement up to $350,000); *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr. D. Del.) (approving break-up of $750,000 or 4.4% of the cash portion of the purchase price and expense reimbursement up to $245,000); *In re Brookstone Holdings Corp.*, Case No. 18-11780 (BLS) (Bankr. D. Del.) (approving break-up fee of $900,000 or 1.4% of the cash purchase price and expense reimbursement of up to up to $300,000); *see also In re The Weinstein Company Holdings LLC*, Case No. 18-10601 (MFW) (Bankr. D. Del.) (approving break-up fee of 3% of cash purchase price or $9.3 million and expense reimbursement of up to 1.5% of the cash purchase price ($4.650 million), with right to seek an amount up to 2% of the cash purchase price ($6.2 million) if the sale hearing is delayed).

**F.    Waiver of Bankruptcy Rule 6004(h)**

40.    Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).  The Trustee requests that the Proposed Order be made effective immediately upon entry by order of waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

41.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to

FED. R. BANKR. P. 6004(h).   Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, the leading bankruptcy treatise suggests that the fourteen-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 COLLIER ON BANKRUPTCY ¶ 6004.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the time necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party.  *Id.*

42.     As set forth above, the APA is the result of good faith, arm's length negotiations, and the Trustee believes that the terms set forth in the APA are in the best interest of the estate. Accordingly, the Trustee hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Notice

43.     The Trustee will provide notice of this Motion by serving a copy of the Motion, together with a Notice of Motion in the form attached hereto as **Exhibit D** (the "Notice of Motion") upon: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the Debtors; (iii) counsel for the First Out Lender; (iv) counsel for the Buyer; (v) all parties who have requested notice in the Debtor's case pursuant to Bankruptcy Rule 2002; (vi) all parties that expressed any interest to the Trustee in acquiring any of the Purchased Assets; and (vii) such entities that have filed financing statements with the Delaware Secretary of State.  In addition, a copy of the Notice of Motion (without a copy of the Motion) will also be served upon all known creditors of the Debtors.   In light of the nature of the relief requested herein, the Trustee

respectfully requests a determination by the Court that such limited notice as described in this paragraph (the "Notice") is adequate and that no other or further notice need be given.  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

## **Conclusion**

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

*[Remainder of page intentionally left blank]*

Dated: May 25, 2023

**ASHBY & GEDDES, P.A.**

*/s/ Ricardo Palacio*
Ricardo Palacio (DE Bar No. 3765)
Benjamin W. Keenan (DE Bar No. 4724)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Email: RPalacio@ashbygeddes.com
         BKeenan@ashbygeddes.com

*(Proposed) Counsel to the Chapter 7 Trustee*