# Exhibit A

# (Proposed Order)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JC USA, Inc., *et al.*[1] | ) | Case No. 23-10585 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related D.I.** |
| | ) | |

**ORDER GRANTING MOTION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b), FED. R. BANKR. P. 6004, AND LOCAL RULE 6004-1, FOR AN ORDER AUTHORIZING THE PRIVATE SALE OF CERTAIN VISA/MASTERCARD LITIGATION CLAIMS**

Upon consideration of the *Motion of Don A. Beskrone, Chapter 7 Trustee, Pursuant to 11 U.S.C. §§ 105(a) and 363(b), Fed. R. Bankr. P. 6004, and Local Rule 6004-1, for an Order Authorizing the Private Sale of Certain Visa/Mastercard Claims* (the "Motion")[2] filed by the Trustee for entry of an Order authorizing a sale of certain Visa/Mastercard Claims free and clear of any liens, claims, encumbrances, and other interests and approving the Proposed Sale between the Trustee and BNKRPT, LLC; and the Court having jurisdiction to consider the relief requested in the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the relief requested in the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the relief requested; and the Court having determined that granting the relief requested in the Motion is appropriate; and it appearing that due and adequate notice of the Motion has been given; and the

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: JC USA, Inc. (0028), JC Franchising, Inc. (7656), New JC Holdings, Inc. (1506), JC Acquisition, Inc. (2395), JC Inter. Holdings, Inc. (3621) and JC Hold, LLC (4170).

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion.

{02007436;v1}

Court having considered all responses or objections (if any) to the Motion; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

**ORDERED**, that the Motion is granted as set forth herein;

**ORDERED,** that the sale of the Visa/Mastercard Claims to BNKRPT pursuant to the APA is hereby approved; and it is further

**ORDERED**, that pursuant to 11 U.S.C. §363(f), the Visa/Mastercard Claims shall be sold to the BNKRPT free and clear of all liens, claims, encumbrances and interests. All such liens, claims, encumbrances and interests, if any, shall transfer and attach to that portion of the sale proceeds payable to the Trustee or the Debtors' Estates. With respect to each creditor having or asserting a lien, claim encumbrance or interest, if any, the sale of the Visa/Mastercard Claims satisfies one or more the requirements set forth in section 363(f)(1)-(5); and it is further

**ORDERED**, that the Trustee is authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary to consummate the sale of the Visa/Mastercard Claims and perform any and all obligations contemplated in this Order and/or in the APA; and it is further

**ORDERED** that the proceeds of the sale of the Visa/Mastercard Claims shall be property of the Debtors' estates; and it is further

**ORDERED**, that the sale of the Visa/Mastercard Claims as contemplated by the Motion shall be protected by section 363(m) of the Bankruptcy Code in the event this Order is reversed or modified on appeal; and it is further

**ORDERED** that this Order shall be effective immediately upon entry and without the need for the execution of any further documents; and it is further

**ORDERED**, that the requirements of Rule 6004(h) are waived and that the closing may occur upon entry of this Order; and it is further

**ORDERED**, that the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of the APA; and it is further

**ORDERED**, that this Court shall retain jurisdiction over any and all matters arising from or related to the implementation of this Order.

# **Exhibit 1**

**(Purchase Agreement)**

{02008635;v1 }

PURCHASE AGREEMENT

This PURCHASE AGREEMENT (the "**Agreement**") is made and entered into as of April 19, 2024, by and between BNKRPT, LLC ("**Buyer**" or **"BNKRPT"**), and Don A. Beskrone, solely in his capacity as Chapter 7 Trustee (the "**Trustee**" or "**Seller**") for the bankruptcy estates of JC USA, Inc. (f/k/a Jenny Craig) [Tax ID No.: 30-0800028]; New JC Holdings, Inc. (f/k/a Craig Holdings, Inc.) [Tax ID No.: 46-3991506]; JC Acquisition, Inc. (f/k/a Jenny C Acquisition, Inc.) [Tax ID No.: 83-3792395]; JC Inter. Holdings, Inc. (f/k/a Jenny C Intermediate Holdings, Inc.) [Tax ID No.: 30-1173621]; JC Hold, LLC (f/k/a Jenny C Holdings, LLC) [Tax ID No.: 35-2654170]; and JC Franchising, Inc. [Tax ID No.: 38-3917656] (collectively the "**Debtors**"). Each of Seller and Buyer is a "**Party**" and collectively they are the "**Parties**" to this Agreement.

RECITALS

A. On or about May 05, 2023 (the "**Petition Date**"), Debtors filed voluntary petitions for relief under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The bankruptcy cases of the Debtors are pending in the United States Bankruptcy Court for the District of Delaware, and the cases are captioned *In re: JC USA, Inc., et al.*, Case No. 23-10585 (JKS) (Jointly Administered).

B. Following the Petition Date, the Trustee was appointed as the chapter 7 trustee of the Debtors and their Estates

C. The assets of the Debtors' bankruptcy estates (the "**Estate**") include any and all claims (the "**Visa/Mastercard Claims**") that the Trustee, on behalf of the Debtors and their Estates, has the right to and may file in that certain class action litigation in the United States District Court for the Eastern District of New York (the "**District Court**") captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (MKB) (JO) (the "**Litigation**").

D. The Visa/Mastercard Claims may be sold by the Trustee, on behalf of the Debtors and their Estates, after notice and opportunity for hearing, upon approval by the Bankruptcy Court.

NOW, THEREFORE, Seller and Buyer agree as follows:

AGREEMENT

1. <u>Purchase Consideration</u>. Buyer agrees to purchase and Seller agrees to sell the Visa/Mastercard Claims in accordance with and pursuant to the following terms:

a) 20% of the gross proceeds received for or on account of the Visa/Mastercard Claims shall be paid to the processing firm with which BNKRPT has pre-negotiated a contingency fee;

b) all reasonable and documented expenses incurred by BNKRPT which consist of third-party costs to maximize the claim amount - eg. fees charged by merchant processors to obtain historical credit card processing transaction data – shall be paid from the gross proceeds realized from the Visa/Mastercard Claims, if any.  For the avoidance of doubt, in the event no or insufficient proceeds are received for or on account of the Visa/Mastercard Claims, neither the Trustee nor the Estates shall have any responsibility for the payment and/or satisfaction of any of the foregoing expenses; and

c) all remaining proceeds received for or on account of the Visa/Mastercard Claims (after satisfaction of a) and b) above) shall be divided equally (50/50) between BNKRPT and the Estates.

2. Conditions to Buyer's Obligation to Purchase.  Buyer's obligation to purchase the Visa/Mastercard Claims is expressly conditioned upon the following:

(a) Court Approval.  Entry of a final order by the Bankruptcy Court approving the sale of the Visa/Mastercard Claims to Buyer.

3. Conditions to Seller's Obligation to Sell.  Seller's obligation to sell the Visa/Mastercard Claims to Buyer pursuant to this Agreement is expressly conditioned upon each of the following:

(a) Performance by Buyer.  Timely performance by Buyer of each obligation, covenant, contingency, and condition hereunder.

(b) Court Approval.  Entry of a final order by the Bankruptcy Court approving the sale of the Visa/Mastercard Claims to Buyer.

4. Condition of the Asset.

(a) IT IS UNDERSTOOD AND AGREED THAT, UNLESS EXPRESSLY STATED HEREIN, SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE VISA/MASTERCARD CLAIMS, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OR REPRESENTATIONS AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(b) BUYER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND CONVEY TO BUYER AND BUYER SHALL ACCEPT THE VISA/MASTERCARD CLAIMS "**AS IS, WHERE IS, WITH ALL FAULTS**." BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATION OR INFORMATION PERTAINING TO THE VISA/MASTERCARD CLAIMS OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN.  BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO

ACCOUNT THAT THE VISA/MASTERCARD CLAIMS ARE BEING SOLD "AS IS, WHERE IS, WITH ALL FAULTS."

(c) BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAS HAD THE OPPORTUNITY TO CONDUCT PRIOR TO CLOSING SUCH INSPECTIONS AND INVESTIGATIONS OF THE VISA/MASTERCARD CLAIMS AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE VISA/MASTERCARD CLAIMS AND ITS ACQUISITION THEREOF. BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS INCLUDING, BUT NOT LIMITED TO, LATENT OR PATENT DEFECTS, ADVERSE PHYSICAL OR OTHER ADVERSE MATTERS, MAY NOT HAVE BEEN REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS.

5. <u>Limited Power of Attorney; Further Assurances</u>. Seller hereby irrevocably appoints Buyer as its true and lawful attorney in fact and authorizes Buyer to act in Seller's name, place and stead, or otherwise, to demand, sue for, compromise and recover all such sums of money that now are or that hereafter might become due and payable for or on account of the Visa/Mastercard Claims, and grants to Buyer full authority to do all things necessary to enforce the Visa/Mastercard Claims, including, but not limited to: (a) file or submit, for Buyer's exclusive benefit (subject, however, to the terms of this Agreement), any claim form or similar document with respect to the Visa/Mastercard Claims; (b) receive distributions or other payments in connection with the Visa/Mastercard Claims; (c) endorse and deposit into Buyer's account any check or other instrument that may be issued in connection with the Visa/Mastercard Claims; and (d) subject to paragraph 8 below, agree to less favorable treatment or a lower notional amount for the Visa/Mastercard Claims than other similarly situated claimants. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer and Buyer shall have no obligation to take any action to prove defend, demand or take any action with respect to the validity or amount of the Visa/Mastercard Claims or otherwise. Seller agrees to (i) (at Buyer's reasonable request and expense) execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be reasonably necessary or appropriate to (a) effect the assignment of the Visa/Mastercard Claims and all interests therein to Buyer and have Buyer recognized by Epiq Class Action & Mass Tort Solutions ("Epiq") as owner of the Visa/Mastercard Claims, and (b) otherwise effectuate the intent of this Agreement and (ii) promptly forward to Buyer all notices, documents or other information received from the District Court, Epiq, or any other third party with respect to the Visa/Mastercard Claims. Seller further agrees that if and to the extent that Seller has preregistered information with Epiq, it will update its submission to provide for the transfer of the Visa/Mastercard Claims to Buyer including, but not limited to, listing Buyer's name, address, phone number and email address as the contact information with respect to the Visa/Mastercard Claims. Without limiting the generality of the foregoing, if and to the extent that Epiq or any other claims administrator, counsel for any party in the Litigation, any court of competent jurisdiction, or persons or entities acting in similar respective capacities, do not recognize Buyer as having the requisite standing or authority to file the Visa/Mastercard Claims, in Seller's name or otherwise, then Seller agrees to file the Visa/Mastercard Claims on Buyer's behalf upon written request (and at the sole expense) of Buyer. Seller agrees that it will not take any action with respect to the Visa/Mastercard Claims, including filing any objection relating to the Visa/Mastercard Claims, without the Buyer's prior, written consent.

{02007758;v3}    3

6. <u>Distributions</u>.  Seller agrees that in the event Seller receives any payments, recoveries, proceeds, disbursements or distributions with respect to or relating to the Visa/Mastercard Claims, whether in the form of cash, securities, instruments or other property, Seller will accept the same as Buyer's agent and will hold the same in trust for and on behalf of and for the sole benefit of Buyer, and, at Seller's expense, promptly deliver the same forthwith to Buyer in the same form received (free of any withholding, set-off, claim or deduction of any kind), together with any endorsements or documents necessary to transfer such distributions or payments to the Buyer, within five (5) business days in accordance with Buyer's written instructions.

7. <u>Sale Subject to Bankruptcy Court Approval and Higher and Better Bids</u>.  Buyer and Seller acknowledge that this Agreement must be approved by the Bankruptcy Court.  Buyer understands, acknowledges and agrees that the Trustee, as a fiduciary, may solicit inquiries, proposals or other offers from third parties for the Visa/Mastercard Claims, and the Trustee may discuss and negotiate such inquiries, proposals or offers and provide information to third parties in connection therewith.

8. <u>Consultation Rights.</u>  Buyer will have sole discretion to prosecute and/or settle the Visa/Mastercard Claims for any amount provided, however, that Buyer shall (i) prosecute and/or settle the Visa/Mastercard Claims in good faith; and (ii) consult with and update Seller, periodically, regarding the status and/or potential disposition of the Visa/Mastercard Claims.

9. <u>Authority, Approval and Enforceability</u>.  Trustee has the necessary capacity, power and authority, subject to Bankruptcy Court approval, to enter into this Agreement, to carry out his obligations hereunder, and to consummate the transaction contemplated herein.

10. <u>Time of the Essence</u>.  Buyer and Trustee agree that time is of the essence with respect to each and every condition required to be satisfied herein.

11. <u>Execution of Documents</u>.  Buyer and Trustee shall execute all instruments and documents and perform all acts reasonably required to accomplish the purpose of this Agreement.

12. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties except for any other agreements referenced herein, and all other previous or contemporaneous oral or written agreements are merged into same.  This Agreement can be amended, supplemented, or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification, or waiver is sought.  The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any Party to exercise, and no delay in exercising, any right, power, or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power, or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power, or remedy.

13. <u>Applicable Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the state of Delaware..

14. <u>Submission to Jurisdiction; Consent to Service of Process</u>. Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby.

15. <u>Notices</u>. All notices, consents, waivers, and communications hereunder given by any party to the other shall be in writing (including electronic mail) and delivered personally, by electronic mail, by a recognized overnight courier, or by dispatching the same by certified or registered mail, return receipt requested, with postage prepaid, in each case addressed:

| | |
|---|---|
| If to Buyer to: | BNKRPT LLC<br>170 NE 2nd Street<br>Suite 74<br>Boca Raton, FL 33429<br>E-mail: payments@bnkrpt.biz |
| If to Seller to: | Don A. Beskrone, Chapter 7 Trustee<br>P.O. Box 272<br>Wilmington, DE  19899<br>Email: dbeskronetrustee@gmail.com |
| with a copy to: | Ricardo Palacio, Esquire<br>Ashby & Geddes, P.A.<br>P.O. Box 1150<br>500 Delaware Avenue, 8th Floor<br>Wilmington, DE  19899<br>Email: rpalacio@ashbygeddes.com |

16. <u>Attorneys' Fees</u>. In the event either party commences an action, arbitration, or other proceeding against the other party to enforce any of the provisions of this Agreement, or in the event any party is involved in litigation, arbitration, or other proceeding by reason of any act of the other party relative to this Agreement, the prevailing party shall be entitled to receive from the other party reasonable attorneys' fees, costs, and expenses incurred in connection with any such action or litigation.

17. <u>Severability</u>. If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any matter materially adverse to any Party.

18. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Nothing in this Agreement shall

create or be deemed to create any third party beneficiary rights in any Person or entity not a Party to this Agreement. Nothing in this Agreement is intended to relieve or discharge the obligations or liability of any third Persons to Seller or Buyer.

19. **Assignment.** The Parties shall have the right to assign their respective rights hereunder, but any such assignment shall not relieve one Party of its respective obligations herein unless the other Party expressly releases the assigning Party.

20. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

21. **Irrevocable Agreement.** This Agreement is irrevocable.

**SELLER:**

DON A. BESKRONE, SOLELY AS
CHAPTER 7 TRUSTEE OF JC USA, INC.
AND ITS AFFILIATED DEBTORS

By: *Don Beskrone, Trustee*
Title: *Chapter 7 Trustee*

**BUYER:**

BNKRPT LLC

By: David Goldin
Title: Member